FILED
JAMES J. VILT, JR. - CLERK
AUG 10 2026
U.S. DISTRICT COURT
WEST'N. DIST. KENTUCKY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT BOWLING GREEN

UNITED STATES OF AMERICA

INFORMATION

v.

NO. 1:26-CR-45-GNS
18 U.S.C. § 981
18 U.S.C. § 1343
28 U.S.C. § 2461

**JOHN N. KOHNEN III**

The United States Attorney charges:

COUNTS 1 – 3
(*Wire Fraud*)

On or about and between March 30, 2020, and May 5, 2021, in the Western District of Kentucky, Warren County, Kentucky, the defendant, **JOHN N. KOHNEN III**, devised a scheme to defraud and to obtain money by means of false and fraudulent pretenses and representations, and transmitted writings and signs in interstate wire communications for the purpose of executing the scheme, to wit:

***Background***

1. The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was a federal law enacted in or around March 2020 and designed to provide emergency financial assistance to businesses suffering the economic effects caused by the COVID-19 pandemic.

2. The United States Small Business Administration ("SBA") is an executive-branch agency of the United States government that provides support to entrepreneurs and small businesses. The SBA is headquartered in Washington, DC, and maintains its computer servers outside the Western District of Kentucky. The mission of the SBA is to maintain and strengthen

the nation's economy by enabling the establishment and viability of small businesses and by assisting in the economic recovery of communities after disasters.

3. As part of this effort, the SBA enables and provides for loans through banks, credit unions, and other lenders. These loans have government-backed guarantees. In addition to traditional SBA funding programs, the CARES Act established several new temporary programs and provided for the expansion of others to address the COVID-19 outbreak.

***The Economic Injury Disaster Relief Program***

4. One response to the COVID-19 outbreak was an expansion of an existing disaster-related program, the Economic Injury Disaster Loan ("EIDL"), to aid small businesses and other eligible entities in regions affected by declared disasters.

5. The CARES Act authorized the SBA to provide EIDLs to eligible small businesses experiencing substantial financial disruption due to the COVID-19 pandemic. In addition, the CARES Act authorized the SBA to issue advances of up to $10,000 to small businesses within three days of applying for an EIDL. The amount of the advance was determined by the number of employees the applicant certified having. The advances did not have to be repaid.

6. The EIDL proceeds could be used for working capital of an established business. However, such loan proceeds were not intended to replace lost sales or profits or for expansion of a business. Moreover, if the applicant also obtained a loan under the Paycheck Protection Program ("PPP"), the EIDL funds could not be used for the same purpose as the PPP funds.

7. Prior to April 6, 2021, borrowers did not have to submit supporting documentation with their applications to the SBA. The SBA relied entirely on the applicant's certifications in the application.

8. Unlike certain other types of SBA-guaranteed loans, applicants applied for EIDLs directly to the SBA via an online portal and application. EIDL funds were issued to applicants

directly from the United States Treasury. The EIDL application process required applicants to provide information about the business's operations and the business owner, including:

a. the date the business was established;

b. the number of employees;

c. information as to the gross revenues for the business for the twelve months prior to January 31, 2020;

d. the cost of goods sold for the twelve months prior to January 31, 2020; and

e. information as to any criminal history of the business owner.

9. Prior to April 6, 2021, the SBA calculated the possible EIDL amount to cover six months of gross profit based on the entity's gross revenues and cost of goods sold provided in the application.

10. EIDL applicants electronically certified that the information provided was true and accurate to the best of the applicant's knowledge and were warned that any false statement or misrepresentation to the SBA or any misapplication of loan proceeds may result in sanctions, including criminal penalties.

***Paycheck Protection Program***

11. One of the new programs was the SBA PPP, which was a loan designed to provide a direct incentive for small businesses who were in operation on February 15, 2020, to keep their workers on the payroll. The PPP application process required applicants to submit a Borrower Application Form through an SBA-approved lender. The PPP loan application required the applicant to acknowledge the program rules and make certain affirmative certifications in order to be eligible to obtain the PPP loan. In the PPP loan application, the applicant was required to state, among other things, its average monthly payroll expenses and number of employees. These figures were used to calculate the amount of money the small business was eligible to receive

under the PPP. In addition, businesses applying for a PPP loan were required to provide documentation showing their payroll expenses. The applicant was also required to state the purpose of the loan and provide background of the business and its owner, including responding to questions relating to criminal history.

12. If a PPP loan application was approved, the participating lender funded the PPP loan using its own monies, which were 100% guaranteed by the SBA. Data from the application, including information about the borrower, the total amount of the loan, and the listed number of employees, was transmitted by the lender to the SBA in the course of processing the loan.

13. PPP loan proceeds were required to be used by the business on certain permissible expenses, including payroll costs, interest on mortgages, rent, and utilities. The PPP allowed the interest and principal on the PPP loan to be entirely forgiven if the business spent the loan proceeds on the allowable expenses within a designated period of time and used a certain percentage of the PPP loan proceeds on payroll expenses.

***The Scheme To Defraud***

14. **JOHN N. KOHNEN III** developed and engaged in a scheme to obtain funds from both the EIDL and PPP pandemic-related loan programs to which he wasn't entitled. **JOHN N. KOHNEN III** controlled and operated the entity Metro Mechanical LLC dba Ridgetop Mechanical Contractors ("Metro Mechanical"). The entity was organized in 2012 and stopped operating and paying employees after the second quarter of 2019.

15. It was part of the scheme that on March 30, 2020, **JOHN N. KOHNEN III** electronically filed, or caused to be electronically filed, application number 3300353299 for an SBA EIDL for the entity Metro Mechanical. **JOHN N. KOHNEN III** identified himself as 100% owner of the entity. In the application, **JOHN N. KOHNEN III** falsely claimed that the entity had eight employees as of January 31, 2020, and had $2,300,000 in gross revenue and $2,245,000

in cost of goods sold for the twelve months prior to January 31, 2020. In the application, **JOHN N. KOHNEN III** stated he requested to be considered for an advance of up to $10,000.

16. The SBA approved the EIDL advance for $8,000. The SBA disbursed $8,000 to a bank account ending in x2281 in the name of Metrotech Mechanical, which appeared as a deposit in the account on April 21, 2020. The SBA declined the EIDL.

17. Almost immediately, **JOHN N. KOHNEN III** began using the EIDL advance funds for his own personal use.

18. It was further part of the scheme that on or about April 15, 2020, **JOHN N. KOHNEN III** electronically filed, or caused to be electronically filed, an application for a PPP loan for the entity Metrotech Mechanical by submitting an SBA Form 2483 *Borrower Application Form* containing materially false and misleading statements to Financial Institution #1. In the application, **JOHN N. KOHNEN III** falsely claimed that the entity Metrotech Mechanical had eight employees and paid $33,720 in average monthly payroll expenses.

19. Financial Institution #1 approved the loan application for $84,300. Financial Institution #1 disbursed $84,300 to a bank account ending in x2281 in the name of Metrotech Mechanical which appeared as a deposit in the account on April 22, 2020.

20. Almost immediately, **JOHN N. KOHNEN III** began using the PPP funds for his own personal use, including making three deposits into a Coinbase account in the amount of $20,000 each and drafting at least nine checks to himself and/or to "Cash" totaling $29,875.

21. It was further part of the scheme that, on or about May 5, 2021, **JOHN N. KOHNEN III** electronically submitted an application for PPP Loan Forgiveness of the April 15, 2020 PPP loan for the entity Metrotech Mechanical by submitting an SBA Form 3508S containing materially false and misleading statements to Financial Institution 1. In the application, **JOHN N. KOHNEN III** falsely claimed that the entity Metrotech Mechanical had eight employees at the

time of the loan application and one employee at the time of the Forgiveness Application. **JOHN N. KOHNEN III** further falsely stated that he spent the full loan amount on payroll costs and falsely certified that he had complied with all requirements in the PPP Rules. The loan was not forgiven.

22. On or about the dates set forth below, in Warren County, Kentucky, in the Western District of Kentucky, **JOHN N. KOHNEN III**, for the purpose of executing the herein-described scheme to defraud, and attempting to do so, did knowingly transmit and cause to be transmitted by means of wire communication in interstate commerce the following writings, signals, pictures, and sounds, each constituting a separate count of this Information:

| COUNT | DATE | INTERSTATE WIRE COMMUNICATION |
|---|---|---|
| 1 | March 30, 2020 | EIDL loan application number 3300353299 transmitted for entity Metro Mechanical transmitted by wire from the Western District of Kentucky to the SBA located outside Kentucky. |
| 2 | April 15, 2020 | SBA Form 2483 in support of PPP loan application for entity Metro Mechanical transmitted by wire from the Western District of Kentucky to Financial Institution #1 located outside Kentucky. |
| 3 | May 5, 2021 | SBA Form 3508S in support of forgiveness of the PPP loan application for entity Metro Mechanical transmitted by wire from the Western District of Kentucky to Financial Institution #1 located outside Kentucky. |

In violation of Title 18, United States Code, Section 1343.

## NOTICE OF FORFEITURE

If convicted of any violation of Title 18, United States Code, Section 1343, as alleged in Counts 1 through 3 of this Information, **JOHN N. KOHNEN III**, the defendant, shall forfeit to the United States any property, real or personal, which constitutes or is derived from proceeds

obtained, directly or indirectly, as the result of the violations, and any property involved in such violations.

Pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and Title 28, United States Code, Section 2461.

KYLE G. BUMGARNER
UNITED STATES ATTORNEY

KGB:NSE

UNITED STATES OF AMERICA v. **JOHN N. KOHNEN III**

## PENALTIES

Counts 1-3: NM 30 yrs./$1,000,000/both/NM 5 yrs. Supervised Release (each count)
FORFEITURE

## NOTICE

**ANY PERSON CONVICTED OF AN OFFENSE AGAINST THE UNITED STATES SHALL BE SUBJECT TO SPECIAL ASSESSMENTS, FINES, RESTITUTION & COSTS.**

SPECIAL ASSESSMENTS

18 U.S.C. § 3013 requires that a special assessment shall be imposed for each count of a conviction of offenses committed after November 11, 1984, as follows:

| | | | |
|---|---|---|---|
| Misdemeanor: | $ 25 per count/individual<br>$125 per count/other | Felony: | $100 per count/individual<br>$400 per count/other |

FINES

In addition to any of the above assessments, you may also be sentenced to pay a fine. Such fine is due immediately unless the court issues an order requiring payment by a date certain or sets out an installment schedule. You shall provide the United States Attorney's Office with a current mailing address for the entire period that any part of the fine remains unpaid, or you may be held in contempt of court. 18 U.S.C. § 3571, 3572, 3611, 3612

**Failure to pay fine as ordered may subject you to the following:**

1. **INTEREST** and **PENALTIES** as applicable by law according to last date of offense.

   For offenses occurring after December 12, 1987:

   No **INTEREST** will accrue on fines under $2,500.00.

   **INTEREST** will accrue according to the Federal Civil Post-Judgment Interest Rate in effect at the time of sentencing. This rate changes monthly. Interest accrues from the first business day following the two week period after the date a fine is imposed.

   **PENALTIES** of:

   10% of fine balance if payment more than 30 days late.

   15% of fine balance if payment more than 90 days late.

2. Recordation of a **LIEN** shall have the same force and effect as a tax lien.

3. Continuous **GARNISHMENT** may apply until your fine is paid.

18 U.S.C. §§ 3612, 3613

If you **WILLFULLY** refuse to pay your fine, you shall be subject to an **ADDITIONAL FINE** of not more than the greater of $10,000 or twice the unpaid balance of the fine; or **IMPRISONMENT** for not more than 1 year or both. 18 U.S.C. § 3615

RESTITUTION

If you are convicted of an offense under Title 18, U.S.C., or under certain air piracy offenses, you may also be ordered to make restitution to any victim of the offense, in addition to, or in lieu of any other penalty authorized by law. 18 U.S.C. § 3663

APPEAL

If you appeal your conviction and the sentence to pay your fine is stayed pending appeal, the court shall require:

1. That you deposit the entire fine amount (or the amount due under an installment schedule during the time of your appeal) in an escrow account with the U.S. District Court Clerk, or

2. Give bond for payment thereof.

18 U.S.C. § 3572(g)

PAYMENTS

If you are ordered to make payments to the U.S. District Court Clerk's Office, certified checks or money orders should be made payable to the Clerk, U.S. District Court and delivered to the appropriate division office listed below:

| | |
|---|---|
| LOUISVILLE: | Clerk, U.S. District Court<br>106 Gene Snyder U.S. Courthouse<br>601 West Broadway<br>Louisville, KY 40202<br>502/625-3500 |
| BOWLING GREEN: | Clerk, U.S. District Court<br>120 Federal Building<br>241 East Main Street<br>Bowling Green, KY 42101<br>270/393-2500 |
| OWENSBORO: | Clerk, U.S. District Court<br>126 Federal Building<br>423 Frederica<br>Owensboro, KY 42301<br>270/689-4400 |
| PADUCAH: | Clerk, U.S. District Court<br>127 Federal Building<br>501 Broadway<br>Paducah, KY 42001<br>270/415-6400 |

If the court finds that you have the present ability to pay, an order may direct imprisonment until payment is made.